[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The subject of this condemnation appeal is real property in the City of Bridgeport known as 999 Broad Street. The property was lawfully taken by the City of Bridgeport pursuant to its power of eminent domain in June 1998, to house the office of the Mayor and offices of other municipal officials and agencies. The parties to the appeal, Triple 9 of Broad Street, Inc. (Triple 9) and Republic Credit Corporation (Republic), Appellants and the City of Bridgeport, Appellee, have stipulated that the date of taking was June 12, 1998.
The subject property contains a two story office building that houses two tenants, the City of Bridgeport and a facility of the Chase Manhattan Bank (Chase). The building originally had been constructed in 1969 to house a large department store and in the past had been the location of Gimbels, and later of Reads department stores. Both those stores subsequently abandoned the downtown Bridgeport location. In 1988 the Mechanics and Farmers Savings Bank (MF) acquired the vacant store building for its corporate headquarters and converted it to a two story office building. MF spent a considerable amount of money for renovations to the building. Unfortunately, MF failed in August 1991 and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver for the bank.
The present record owner, Triple 9 Inc., purchased 999 Broad Street at an auction in December 1992 for $3,250,000. The purchase was financed by a non recourse mortgage loan from the FDIC in the amount of $2,437,500. The balance of the purchase price of $812,500 was paid by Triple 9. The mortgage was subsequently acquired by the State Street Bank and later assigned to Republic. The record is devoid of any indication of what Republic paid for the mortgage.
The subject property is a 2.53 acre site located in downtown Bridgeport. The main entrance to the building on the site is located on Broad Street. The site also has frontage on State Street and John Street. The building on the site is a two story, steel frame structure with exterior walls of brick and precast concrete. It is nearly square in shape and originally had eighteen foot ceilings on the first and second floors which have been dropped to approximately nine feet in the office areas and ten feet in the corridor areas. For its size the building has few window openings and consequently it has an almost subterranean character in many areas.
The building has four escalators, two passenger elevators, and a freight elevator. The heating and cooling systems look to be functional as do the four sump pumps that are in the basement to control a seepage CT Page 1775 problem. The mechanical equipment, however, appears, for the most part, to be the original equipment and would have seen considerable use as of June 12, 1998, the day of taking. The gross area of the building at 999 Broad Street is approximately 149,000 square feet and it has approximately 125,000 square feet of rentable space. When acquired by the city the site had a limited and a less than ideal parking situation.
The court toured the property on November 7, 2001. During that tour it was observed that the building had some rather elegant appointments. Those were no doubt the result of the make over of part of the building into executive offices by MF before MF failed. Those appointments were part of the building on June 12, 1998. It was also observed, however, that the building had a great deal of space given over to corridors and lobby areas. This was undoubtably necessitated by the conversion of the wide open retail sales areas of the building into office space.
The appellants in their case in chief presented two appraisers Robert Von Ancken and Eric Michel.[1] The appellee presented one appraiser, George Shawah. All the appraisers qualified as experts and all agreed that the highest and best use of the property was for a one or two tenant office building. They also agreed that the cost approach was not a proper method for evaluation of this property. The appraisers therefore attempted to value the property by the comparable sales and income methods of evaluation.
Because of the lack of sales of similar buildings in downtown Bridgeport and the dearth, generally of sales of office buildings anywhere in Bridgeport, the comparable sales method, quite frankly, was not overly helpful or informative in arriving at a value for this particular property. The testimony concerning comparable sales did reveal, however, that there was little or no market for large office space in downtown Bridgeport on June 12, 1998. It is the court's opinion that if Triple 9 had placed 999 Broad Street on the market on the date of the taking there would have been no buyers at a price close to the $3,000,000 plus that the appellants claim was its fair market value on that date.[2]
The court finds, however, that the offer of $1,120,000 that the appellee deposited with the Clerk of the Superior Court is low. Even the appellee's appraiser, utilizing the income approach, determined the market value of the property on the date of taking to be $1,600,000 if it could be assumed that the appellee would be able to negotiate a lease of the first floor with Chase. The court believes that the evidence reveals that given the incentives the City was able to offer Chase, the lease was a virtual certainty and should have been reflected in its offer. In addition the court finds the subject property had amenities and an CT Page 1776 ambience in some areas that stemmed from its renovation by MF that make it worth more than a bare bones income approach would indicate. Further 999 Broad Street is strategically located to take advantage of any renaissance that may occur in downtown Bridgeport. That potential, although not fulfilled, existed on June 12, 1998 and adds some value to the property.
The court finds, therefore, that based on its own observations, the evidence presented at trial and the arguments of counsel that the fair market value of 999 Broad Street on June 12, 1998, the date of taking was $1,750,000.
The court further finds that $1,120,000 was deposited on June 12, 1998 by the appellee, City of Bridgeport with the Clerk of the Superior Court for the use of the persons entitled thereto on account of the damages to be awarded and that the deficiency between the fair market value of the property on the date of taking and the amount so deposited is $630,000. The court also finds that under all the circumstances a fair, just and reasonable rate of interest, on the amount of the difference between the amount of damages paid by the City and the amount determined by the court is 4% from the date of taking.
In addition the court awards appraisal fees of $5,000 each to Robert Von Ancken and Eric Michel for their appraisal services, reports and testimony in court, entitling the appellants to that amount as part of their costs.
Judgment may enter in accordance with the above.
EDWARD F. STODOLINK, J.
MYRON R. BALLEN, J.
ROBERT J. CALLAHAN, J.